Brockenbrough, J.
Matthew Weatherly being possessed of certain lots and houses in the town of Xeeshurg, and Jane M'Farland widow of John M'Farland being possessed of considerable personal property, and of real estate in and near the town of Middleburg, entered into marriage articles which, before the marriage took place, were carried into effect by a deed of marriage settlement dated in January 1804. The parties made two trustees, to one of whom, James Crane, was conveyed all of Jane M'Farland's estate, and to the other, Burr jPowell, was conveyed all of Matthew Weatherly's estate. As to the first, the declaration of trust was, that after the solemnization of the marriage, Weatherly the husband was to enjoy all the profits of his wife’s estate, real and personal, during the joint lives of himself and his wife, or might sell, transfer and convey, *38 jointly with his wife, any of the said property of his wife which she might when sole have disposed of, she consenting to the sale and joining in the conveyance; if she survived the husband, the trustee was to reconvey to ‘ her all her own estate not disposed of as aforesaid; but if the husband survived the wife, then her estate was to go to whomsoever she should by deed or will, attested by three witnesses, appoint (and in such case not to be subject to the control or debts of the said Matthew Weatherly) and in default of appointment, to her nephews and nieces. As to his estate conveyed as aforesaid to Burr Powell, the said trustee was to permit Matthew Weatherly, during his life, to receive the profits thereof, or to sell and convey the same, provided his wife ■should consent to the sale and join in the conveyance; and in case he survived his wife, the trustee to reconvey to him; but if the wife survived the husband, the trustee was to permit the wife, during her life, to enjoy the profits thereof; with similar power of appointment, and on failure of appointment, to his right heirs.
The husband and wife did not live together in hai’mony; they soon agreed to separate, and did separate. In June 1808 the parties executed two deeds. By one of these deeds (the same which is marked B. and annexed to the deposition of Henderson) the said Matthew Weatherly and Jane his wife conveyed with general warranty, for the consideration of 200 dollars, to James Crane (who was trustee of the wife in the marriage settlement deed) the land adjacent to Middlelurg, and the lot in that town.. By a memorandum at the foot of this deed, the said James Crane bound himself to convey the said property according to the direction of Jane Weatherly, or to such person as she might direct. The other deed (marked A.) was executed on the same day by the same grantors, to John Littlejohn, and although it is in part mutilated, yet it appears clearly enough to be a conveyance, for the consideration of one dollar, of *39 the said Matthew Weatherly's lots in Leeslurg and its suburbs. The witness Henderson says that James Crane the trustee was to execute a bond to Matthew Weatherly, binding himself to convey to him the said lots, so that he might receive an unincumbered title to them; and he thinks that Crane did execute such bond, binding himself to see the conveyance put into due form by Jane Weatherly, or that she should not set up any claim to the said lots. He moreover proves that the consideration operating on Matthew Weatherly to execute the deed (B.) conveying his wife’s property to her trustee, was that he should receive his own lots free from incumbrance; and this is also proved by Chilton. To these deeds Jane Weatherly was never privily examined, and they were never recorded.
But it is clear that a separation between this husband and wife did in fact take place, at least as early as June 180S: that the wife did from thenceforth take and enjoy all the profits of the lot in Middleburg and the land adjacent, as well as of sundry slaves which were in her possession at the time of the marriage, until the death of her husband in 1821, a period of nearly 14 years. It is also certain that by the terms of the marriage settlement deed the husband was entitled to all those profits during his life, and that, by surrendering them to her use, in consequence of the arrangement made by the separation deeds, great loss was sustained by him, and great benefit accrued to her.
Jane Weatherly survived her husband, and the original bill in this case was filed by herself, for the purpose of recovering from the executor and devisee of the husband the rents and profits of his lots which accrued after his death, and those which might thereafter accrue during her life.
There is no doubt that under the marriage settlement deed she would have been entitled to those rents and profits, if she had continued to stand in the same rela *40 tion towards her husband as she did on the execution of it. But the question is whether, either under the separation deeds, or the fact of actual separation and the enjoyment of her own property as before mentioned, she or her executors can now recover those profits.
It was contended by the appellant’s counsel that the' deed (marked A.) which purports to convey the lots of the husband to Littlejohn, was made in conformity with the power and authority conferred by the marriage settlement deed on Weatherly, to sell and convey the same, provided his wife should consent to the sale and join in the conveyance. I cannot think so, for two reasons; first, because the sale contemplated by the marriage settlement deed was one which should transfer the estate to a real purchaser, and not to a mere trustee for the purpose of reconveying it to the husband himself; and secondly, because the wife did not unite in the conveyance to Littlejohn in the mode directed by law. She was not privily examined; and although the settlement deed does not in terms speak of a privy examination, yet as there is no other mode by which a feme covert can by law convey her interest in land, the parties cannot be supposed to mean any other, unless they had so expressed it.
It was next contended by the appellant’s counsel that the actual separation which occurred in this case, following the clearly proved parol agreement to separate on certain specific terms, and the possession of the property, real and personal, yielded to the wife in virtue of that agreement, would justify a court of equity specifically to execute that contract, on a bill filed by the wife for that purpose. This position is, I think, supported by the decisions of the courts of equity in 'England, in which it seems to be established that husband and wife have the power to effect a legal and binding separation through the intervention of trustees, by mutual agreement to part. 2 Roper 272. In this case, infor *41 mal as the instrument is which was executed by the * husband and wife, yet the agreement to separate and the terms of the separation are satisfactorily proved, and this was to be effected through the agency of James Crane, the same trustee who had been chosen when settlement was made. If the husband had undertaken to dispossess the wife of this Middleburg property, after having separated by mutual consent, and after having yielded to her the property for her own use, I am of opinion that a court of equity would rightfully have interposed, and have specifically executed the agreement of separation.
But the husband made no such attempt; on the contrary he quietly surrendered to her all her own property, to the profits of which he would have been entitled but for the agreement to separate; he voluntarily extended equity to her; he did all that the most liberal forum could have required at his hands.
But she is not contented with that full measure of justice. Having, during her husband’s life, claimed against the deed of settlement, as soon as she becomes a feme sole she sets up her claim under the deed. This is unjust and iniquitous, and cannot be tolerated. It would not be right to allow her claim, without requiring her to account for the profits received from her part of the estate, even if those profits were less than those accruing from her husband’s part. How much more glaring is it, when it is proved that they are much greater! It appears that the net profits of the husband’s estate from the time of his death to the death of the wife were 969 dollars 24 cents; and by the commissioner’s report, founded on M'VeigKs evidence, the profits which she derived -from her part of the estate, after the separation and to the time of her husband’s death, amounted to 4437 dollars 50 cents; which sum he would have been entitled to, but for the separation.
*42 I am of opinion that the decree be reversed with costs; that the original bill filed by Jane Weatherly be dismissed; and that the appellant recover his costs, as well in the suit in which he was plaintiff as in the said » • -t • . original suit.
Cabell, J.
It is not necessary to decide whether, if either of the parties to the terms of separation, so clearly and fully proved in this case, had refused to comply with those terms, a court of equity would have enforced their specific execution. That question does not arise: for they were actually executed by the parties themselves; so far at least as related to the enjoyment of the benefits resulting from the arrangement. Weatherly yielded up all his rights under the marriage settlement, and strictly complied during the balance of his life, a period of 14 'years, with the terms of the separation, which were disadvantageous to himself and highly beneficial to his wife. During all this period she acquiesced in and received the benefit of the arrangement made by her own trustee, and then, on the death of her husband, claimed the benefit of the marriage settlement which she had so long repudiated. This ought not to be tolerated in a .court of equity and good conscience. On this ground^ I am of opinion to reverse the decree and to dismiss the bill with costs.
Decree reversed and bill dismissed.